UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

UNITED STATES OF AMERICA,

          Plaintiff,

v.

                                         Case No. 19-20839

JAMAL LAMAR MOCK,

          Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**

Defendant Jamal Lamar Mock moves to suppress the use as evidence of a handgun and magazine recovered by police in pursuing him from a vehicle he had been driving. (ECF No. 23.) The government has filed a response. (ECF No. 30.) Defendant argues the officers' attempted traffic stop, if completed, would have been baseless, and as such would have violated his Fourth Amendment rights. However, as explained below, no stop was ever completed since Defendant fled, first at very high speed in the vehicle, and then on foot. No material facts are in dispute, and no hearing is needed. E.D. Mich. L.R. 7.1(f)(2). The property Defendant abandoned in his flight—a semi-automatic pistol found on the ground, and a loaded magazine found on the floor of his car—does not receive Fourth Amendment protections and may properly be admitted into evidence. Defendant's motion will be denied.

**I. BACKGROUND**

On November 14, 2019, Detroit police were searching for a suspect in a homicide investigation. (ECF No. 30-2, PageID.150, Police Report.) The police identified the suspect as "a black male, light complexion with a tear drop tattoo on his

face, slim build, with two braids going to [his] back, and approximately 5'10["] in height."
(*Id.*) The man was thought to be in the area of Chippewa Avenue and Ilene Street in
Detroit, Michigan. (*Id.*) A fixed surveillance operation was established at that location.
(*Id.*) Police observed a man "matching" the suspect's description in the area under
surveillance enter a vehicle and drive away. (*Id.*) Additional police assistance was
sought to stop the vehicle after it began moving. (*Id.*)

Police in a patrol car caught up with the subject vehicle, driven by Defendant,
about half a mile away and attempted to effectuate a traffic stop. (*Id.*, PageID.152, 156.)
Police noted that Defendant's passenger brake light was inoperable. (*Id.*, PageID.152.)
The patrol car engaged its emergency lights. (*Id.*) Defendant at first slowed down, but
then ignored police signals, sped up, and fled. (*Id.*)

A long and dangerous pursuit ensued. For at least seventeen minutes,
Defendant attempted to elude police, ignoring several police vehicles with emergency
lights flashing and sirens sounding, violating a myriad of traffic laws. (*Id.*; Plaintiff's
Exhibit 3, 00:20-17:20 (dash cam of patrol vehicle in pursuit of Defendant).) Police
records explain that Defendant "disregard[ed] all speed limits and traffic control devices"
for "too many streets to count." (ECF No. 30-2, PageID. 152, 156.) Dashcam footage
shows police driving seventy to eighty miles per hour in residential neighborhoods to
keep pace with Defendant. (*E.g.*, Plaintiff's Exhibit 3, 08:13-09:45.)

Defendant swerved his vehicle onto Eight Mile Road, a major, heavily trafficked
road bordering Detroit. (Plaintiff's Exhibit 2, 00:20-00:48.) He pulled the vehicle into a
gas station and both Defendant and his passenger—the homicide suspect—fled on foot.
(*Id.*; ECF No. 30-2, PageID.150-53, 156.)

While running after Defendant, police observed "the butt of a gun on [Defendant's] right hip." (ECF No. 30-2, PageID.151.) The gun fell from Defendant's possession shortly before officers were able to tackle and handcuff him. (*Id.*) Police traced the route backward, and recovered a semi-automatic nine-millimeter pistol with no magazine but with one round in its chamber. (*Id.*; Plaintiff's Exhibit 5, 13:15-13:20.) Officers later recovered from the driver's side floorboard of Defendant's vehicle a magazine fitting that firearm and loaded with nine-millimeter bullets. (ECF No. 30-2, PageID.152; Plaintiff's Exhibit 5, 14:50-15:02.) When arrested, Defendant was wearing a leather handgun holster on his waist. (ECF No. 30-2, PageID.160.)

## II.  STANDARD

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The purpose of the Fourth Amendment is "to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Taylor v. City of Saginaw*, 922 F.3d 328, 332 (6th Cir. 2019) (quoting *Camara v. Mun. Court of San Francisco*, 387 U.S. 523, 528 (1967)). "[W]hat the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures." *Terry v. Ohio*, 392 U.S. 1, 9 (1968) (quoting *Elkins v. United States*, 364 U.S. 206, 222 (1960)).

The Fourth Amendment "contains no provision expressly precluding the use of evidence obtained in violation of its commands." *Herring v. United States*, 555 U.S. 135, 139 (2009) (quoting *Arizona v. Evans*, 514 U.S. 1, 10 (1995)). Over the course of many years, the Supreme Court developed the "exclusionary rule," which "forbids the use of

improperly obtained evidence at trial." *Id.* The rule is "designed to safeguard Fourth Amendment rights generally through its deterrent effect" and is not a "necessary consequence of a Fourth Amendment violation." *Id.* at 139-40, 141 (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)); *Davis v. United States*, 564 U.S. 229, 236-37 (2011) (citations removed) ("Exclusion is not a personal constitutional right, nor is it designed to redress the injury occasioned by an unconstitutional search. The rule's sole purpose . . . is to deter future Fourth Amendment violations.").

The exclusionary rule serves to "prohibit[] introduction into evidence materials seized during an unlawful search, and of testimony concerning knowledge acquired during an unlawful search." *United States v. Howard*, 621 F.3d 433, 451 (6th Cir. 2010) (quoting *Murray v. United States*, 487 U.S. 533, 536-37 (1988)). It also prohibits "the introduction of derivative evidence, both tangible and testimonial, that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search, up to the point at which the connection with the unlawful search becomes so attenuated as to dissipate the taint." *Id.*

In deciding whether evidence was obtained improperly through an illegal search and seizure, "the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial." *United States v. Raddatz*, 447 U.S. 667, 679 (1980); Fed. R. Civ. P. 104(a) ("The court must decide any preliminary question about whether . . . evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege.").

## III. DISCUSSION

Defendant's motion to suppress evidence also seeks an evidentiary hearing. The court will address the question of a hearing before turning to the merits.

### A. Defendant's Request for an Evidentiary Hearing

Defendant includes in his motion a request for an evidentiary hearing. (ECF No. 23, PageID.72.) In deciding motions to suppress, the court must hold an evidentiary hearing "if the motion is sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. Ickes*, 922 F.3d 708, 710 (6th Cir. 2019) (quoting *United States v. Abboud*, 438 F.3d 554, 577 (6th Cir. 2006)); *United States v. Schumacher*, 611 F. App'x 337, 341 (6th Cir. 2015) (citations removed) ("[T]o mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine."); *United States v. Thompson*, 16 F. App'x 340, 344 (6th Cir. 2001) ("A district court is required to hold an evidentiary hearing when the defendant has set forth contested issues of fact that bear upon the legality of the search."). If, however, the questions presented are "entirely legal in nature" the court may decide the motion without a hearing. *Ickes*, 922 F.3d at 710. Further, even if there are contested facts, "a district court can forgo conducting an evidentiary hearing if sufficient content remains to support a finding of [constitutionality] after the contested items are set aside." *Thompson*, 16 F. App'x at 344.

Here, the parties contest no facts that are material to the court's analysis. Defendant does not submit any evidence of his own, but merely asserts, on a foundation of the government's evidence, that there were insufficient facts to justify a

5

decision by police to effect a "traffic stop." (ECF No. 23, PageID.81, 83-84.) Defendant attempts call into question the actual inoperability of a taillight as officers noted, and whether the man entering his car resembled the homicide suspect's description. These claimed factual questions would apply only in examining whether the initial "traffic stop" was sound, a question to be reached only if the stop had been completed. However, the stop was not effectuated until after Defendant and the passenger bailed out of Defendant's vehicle, twenty minutes later. (ECF No. 30-2, PageID.152, 156; Plaintiff's Exhibit 3, 00:20-17:20.) By the time Defendant was caught—"seized" for Fourth Amendment purposes—he had been observed committing many other crimes, traffic-related and otherwise. U.S. Const. amend. IV. (ECF No. 30-2, PageID.152, 156; Plaintiff's Exhibit 3, 00:20-17:20.) As further explained below, a resolution of facts attendant to the original order to stop is not necessary.

Defendant presents no evidence contradicting the facts 1) that police reported a wanted homicide suspect entering Defendant's vehicle, 2) that Defendant began to drive away and was signaled to bring his vehicle to a halt, 3) that Defendant first slowed but 4) that Defendant then began a high-speed flight with police in pursuit, 5) that Defendant stopped the vehicle and jumped out, 6) that Defendant then fled on foot, 7) that Defendant was seen to have possession of a firearm on his person during the pursuit, 8) that Defendant left his car abandoned and running in a parking lot, and 9) that Defendant was finally tackled and arrested, 10) that a chambered (i.e., partially loaded) nine-millimeter firearm was found along the path of Defendant's flight on foot, and 11) that a loaded nine-millimeter magazine was found in plain sight on the floor of Defendant's abandoned vehicle. (ECF No. 30-2, PageID.150-53,156; Plaintiff's Exhibit

2, 00:20-00:48; Plaintiff's Exhibit 3, 00:20-17:20; Plaintiff's Exhibit 4, 08:50-08:54; Plaintiff's Exhibit 5, 13:15-13:20, 14:50-15:02.) In sum, there is no "contested issue[] of fact" either that the nine-millimeter firearm Defendant is alleged to have possessed was dropped or abandoned while Defendant fled the police on foot, or that a nine-millimeter pistol magazine was left in Defendant's car at the driver's floorboard.[1] *Ickes*, 922 F.3d at 710.

The motion turns on the undisputed facts that Defendant was approached, refused to stop and submit to police commands, and abandoned a firearm and magazine while fleeing the police before being arrested. None of these facts are disputed with "definite, specific, detailed, and non-conjectural" arguments. *Id.* The dispute, then, is not factual, but is "entirely legal in nature." *Id.* An evidentiary hearing is unnecessary.

### B. Defendant's Motion to Suppress

Defendant's sole argument supporting evidence suppression is that the initial attempted "traffic stop," before Defendant fled in his car and on foot, violated the Fourth Amendment.

When police stop a vehicle, the Fourth Amendment's protections against "unreasonable . . . seizures" apply. U.S. Const. amend. IV. "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons.'" *Whren v. United States*,

---

[1] Defendant does not admit he possessed the firearm and magazine, but does not contest the facts the government has amassed in support of those findings. (*E.g.*, ECF No. 23, PageID.77 ("Officer Ambrouse allegedly observed a handgun fall from Defendant's person while he was running.").)

517 U.S. 806, 809-10 (1996) (quoting U.S. Const. amend. IV). If a traffic stop is not properly justified, evidence obtained in a subsequent search is inadmissible. "[A]n officer must have probable cause to make a stop for a civil infraction," such as a traffic violation, "and reasonable suspicion of an ongoing crime to make a stop for a criminal violation." *United States v. Collazo*, 818 F.3d 247, 253-54 (6th Cir. 2016).

The court need not determine whether the initial attempted stop of Defendant was permissible. Caselaw is well-established that discovery of incriminating evidence abandoned while Defendant was in flight, but before capture, is not a thing within the protection of the Fourth Amendment.

In *California v. Hodari D.*, 499 U.S. 621 (1991), police approached a group of young people including the defendant, and upon seeing them, the defendant fled. *Id.* at 623. While running, the defendant threw away a rock, later recovered and determined to be crack cocaine. *Id.* The defendant moved to suppress evidence of the drugs, arguing the police did not have a legal basis for suspecting the defendant was engaged in illegal activity, and that the initial approach by police was itself unlawful. *Id.*

The Supreme Court rejected the defendant's argument and held that a seizure within the meaning of the Fourth Amendment had not taken place. *Id.* at 627. To establish that law enforcement had effected a "seizure" the Court required "either physical force . . . or, where that is absent, submission to the assertion of authority[.]" *Id.* 626 (emphasis removed). A mere "show of authority," including police approaching the defendant, running after him in pursuit, and ordering him to stop, were insufficient to trigger the Fourth Amendment. *Id.* at 629. Evidence of the defendant's discarded narcotics was not subject to the exclusionary rule, even if the police had lacked a legal

basis for seizing the defendant initially. *Id.* at 627. The Court reasoned: "Since policemen do not command 'Stop!' expecting to be ignored, or give chase hoping to be outrun, it fully suffices to apply the deterrent [of the exclusionary rule] to their genuine, successful seizures." *Id.*

Since *Horadi D.*, courts have accepted the principle that a person who refuses to submit to police commands to stop, and subsequently flees, has not (yet) been "seized." Evidence obtained from a defendant's abandonment of property during a chase is not subject to Fourth Amendment protections.

Sixth Circuit precedent illustrates the principle.

In *United States v. Ward*, 756 F. App'x 560, 563-64 (6th Cir. 2018), the defendant ran from the police after police officers asked him to "come on over here" while on a public sidewalk. The defendant discarded a semi-automatic pistol during his flight, and the court found it admissible. *Id.* The court reasoned "[t]he Fourth Amendment does not apply to anything one may abandon while fleeing the police in an attempt to avoid a seizure." *Id.*

In *United States v. Seymour*, 739 F.3d 923, 927-29 (6th Cir. 2014), police attempted to pull over a vehicle, but before the vehicle came to a stop, the defendant got out and fled on foot. The defendant was tackled by police and a handgun "flew" away from his hand. *Id.* The court reasoned that the defendant "did not submit to the show of police authority" and "was not seized until tackled" at the end of the chase. *Id.* The firearm was admissible. *Id.* "[E]ven if [the] attempt to pull over the [vehicle] had been unlawful, it would not change the Fourth Amendment analysis." *Id.*

In *United States v. Jeter*, 721 F.3d 746, 751-53 (6th Cir. 2013), police cut off the defendant, who was on a bike, causing the defendant to "momentarily pause." The defendant then ran from the police on foot, grabbed his right pocket while running, and was tackled. *Id.* A handgun was found on the defendant. *Id.* The court found that the defendant's "momentary pause" after being cut off was not a seizure, and by the time the defendant was tackled, police had a legal basis to search him for weapons. *Id.* The handgun was held admissible. *Id.*

In *United States v. Martin*, 399 F.3d 750, 752-53 (6th Cir. 2005), police approached the defendant on a sidewalk; the defendant ran and threw away a revolver during his flight. The court found the revolver admissible because "the defendant did not submit to the show of authority made by the officers" and thus "he had not been seized when he discarded his revolver." *Id.* "[I]t [was] irrelevant whether police misconduct caused the abandonment." *Id.*

Here, it is uncontested that police suspected Defendant's passenger to be a suspect in a homicide investigation. (ECF No. 30-2, PageID.150.) A police patrol car approached Defendant's vehicle, activated emergency lights, and signaled Defendant to pull over. (ECF No. 30-2, PageID.152, 156.) That was a "show of authority" to which Defendant was required to acquiesce and stop his car. *Hodari D.*, 499 U.S. at 629. If he had done so, the court would probably consider whether the stop was justified, either with probable cause as to an alleged traffic violation, or with reasonable suspicion for an alleged criminal violation.[2] *Collazo*, 818 F.3d at 253-54.

---

2   It is not necessary to decide the issue to observe police should ordinarily be able to stop a vehicle in which is sitting a man wanted for investigation of a recent homicide. *Collazo*, 818 F.3d at 253-54; *United States v. Stepp*, 680 F.3d 651, 664 (6th Cir. 2012)

Nonetheless, Defendant did not stop and did not "submi[t] to the assertion of authority." *Hodari D.*, 499 U.S. at 626. He at most "slowed" his vehicle, and then sped off, ignoring police signals and traffic laws alike. (ECF No. 30-2, PageID.152 (The report of the officer driving the patrol car that attempted to pull Defendant over: "The GMC slowed then disregarded my scout car emergency lights [and] fled in the vehicle"); *id.*, PageID.156 (The report of the officer sitting in the passenger seat: "[A]ctivated lights and sirens to [e]ffect a traffic stop on the vehicle. The vehicle continued to drive . . . disregarding lights and sirens.").) Defendant chose to engage in a long, dangerous—and potentially deadly—flight from authority, culminating in his flight on foot and eventual capture. (ECF No. 30-2, PageID.152, 156; Plaintiff's Exhibit 3, 00:20-17:20.)

It is undisputed that, seconds before being tackled, Defendant dropped a handgun. (ECF No. 30-2, PageID.151; Plaintiff's Exhibit 4, 08:50-08:54; Plaintiff's Exhibit 5, 12:55-13:35.) The nine-millimeter pistol was missing its magazine, and a magazine loaded with nine-millimeter bullets was found on the driver's side floor of Defendant's abandoned vehicle. (ECF No. 30-2, PageID.151, 152; Plaintiff's Exhibit 5, 14:50-15:02.).

The Fourth Amendment will not require suppression of evidence abandoned as Defendant was fleeing the police. He was not "seized" until he was physically retrained. *Hodari D.*, 499 U.S. at 626. Until seizure, property Defendant abandoned is admissible at trial. *Howard*, 621 F.3d at 451 (The exclusionary rule applies only to evidence obtained, directly or indirectly, from an "unlawful search" under the Fourth Amendment).

---

(citations removed) (Police officers need only "point to specific and articulable facts that are more than an ill-defined hunch" to establish "reasonable suspicion.").

11

This is true even if the initial attempt to approach and stop Defendant's vehicle was not legally justified. *Id.* at 627; *Seymour*, 739 F.3d at 929; *Martin*, 399 F.3d at 753.

There is no distinction between the firearm and the magazine, even though the magazine was left in a car with its doors closed and the firearm was visible on a public sidewalk. A defendant has standing to make a Fourth Amendment challenge only when he has a "reasonable expectation of privacy." *United States v. Washington*, 573 F.3d 279, 282 (6th Cir. 2009) (citing *United States v. Pollard*, 215 F.3d 643, 647 (6th Cir. 2000)). "To establish such an expectation, the defendant must show (1) that he had a subjective expectation of privacy, and (2) that his expectation was objectively reasonable." *Id.* When Defendant left the vehicle running and unlocked on the gas station's property, Defendant relinquished any "reasonable expectation of privacy" in the vehicle or properly left in view on its floor. The Sixth Circuit has come to this conclusion in several analogous cases.

In *United States v. Foster*, 65 F. App'x 41, 46 (6th Cir. 2003), the defendant left his vehicle during a traffic stop and ran after the police discovered cocaine. The police searched the defendant's vehicle and found his cell phone. *Id.* The court found the phone admissible because "the defendant had fled the scene and had abandoned the vehicle he was driving. Such abandonment extinguishes any reasonable expectation of privacy." *Id.*

Similarly, in *United States v. Grecni*, 940 F.2d 633 (Table), at *3 (6th Cir. 1991), the defendant, while fleeing the police, parked his car and continued on foot. The police subsequently searched the defendant's car and discovered over 100 pounds of marijuana. *Id.* The court found the drugs admissible, reasoning: "[a]t the time of the

12

search, [the defendant] had no reasonable expectation of privacy in the car or in any items found in the car. He abandoned that expectation when, in trying to elude the police, he left his car unlocked and unoccupied with the keys in the ignition." *Id.*

In *United States v. Oswald*, 783 F.2d 663, 666 (6th Cir. 1986), the defendant left his car on fire on the side of a public road. Police searched the car after the fire was extinguished and discovered a suitcase full of cocaine. *Id.* The court found the drugs admissible, reasoning that "[the defendant] gave up his expectation of privacy." *Id.*

Here, Defendant could not have reasonably assumed the interior of his vehicle would remain private when the vehicle was left running and unlocked on private property. *Washington*, 573 F.3d at 282.

Even if the Fourth Amendment were to apply, Defendant's arrest was supported by probable cause and his handgun could be seized incident to arrest. "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). A court must analyze the "reasonable conclusion[s] . . . drawn from the facts known to the arresting officer at the time of the arrest" and determine whether the officer had "information sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense." *Id.*; *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

Defendant attempted to elude the police by driving recklessly on numerous streets in Detroit for at least seventeen minutes. (ECF No. 30-2, PageID.152, 156; Plaintiff's Exhibit 3, 00:20-17:20.) He drove upwards of eighty miles per hour through

residential areas and violated a myriad of traffic laws, all while ignoring several police vehicles in close pursuit. (ECF No. 30-2, PageID.152, 156; Plaintiff's Exhibit 3, 00:20-17:20.) Defendant then ran from his car on foot. A police officer chasing Defendant observed "the butt of [a] gun on his right hip" as he ran. (ECF No. 30-2, PageID.151.) Before stopping Defendant, the officer saw, " [a] gun [fall] to the ground." (*Id.*) The police officers who arrested Defendant, at the time of arrest, had overwhelming evidence that Defendant "committed . . . an offense." *Gardenhire*, 205 F.3d at 315. Defendant's arrest was proper. *Id.*

Police retrieved Defendant's firearm within feet of where Defendant was brought down and handcuffed. (ECF No. 30-2, PageID.153 (After Defendant's arrest, the handgun was "observed . . . on the sidewalk in the snow."); Plaintiff's Exhibit 4, 08:50-08:54 (Defendant falling and appearing to grab for something on the ground within feet of where he was arrested); Plaintiff's Exhibit 5, 12:55-13:35 (Police officer discovering the handgun on a snowy sidewalk where Defendant had fallen, within feet of where he was arrested).) In an almost identical factual scenario, the defendant in *Seymour*, 739 F.3d 923, had a pistol "fly[] from his hand" when tackled after running from the police. *Id.* at 926. The Sixth Circuit reasoned that "[the] [d]efendant was not seized until he was tackled, and he was not tackled until the [police] had probable cause to arrest him." *Id.* at 929. The handgun was "seized incident to a lawful arrest" and was admissible. *Id.* Here, Defendant's handgun was not only abandoned and not obtained pursuant to a Fourth Amendment "seizure," Defendant had the weapon within close proximity of his person when he was lawfully arrested. Evidence of the handgun would not be suppressed, even if the Fourth Amendment applied. *Howard*, 621 F.3d at 451.

The discovery of the magazine would also satisfy the Fourth Amendment if it were to apply. "[P]olice officers may conduct a warrantless search of a vehicle if they have 'probable cause to believe that the vehicle contains evidence of a crime.'" *United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007) (quoting *United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998)). Defendant's vehicle was searched after Defendant was arrested. (ECF No. 30-2, PageID.152; Plaintiff's Exhibit 5, 14:50-15:02.) By that point, the police had seen the "the butt of a gun" while Defendant was running and a firearm fall from Defendant's possession, and had discovered a pistol with a missing magazine. (ECF No. 30-2, PageID.151; Exhibit 5, 13:15-13:20.) The passenger Defendant was driving was also seen with a weapon. (ECF No. 30-2, PageID.156 ("The passenger exited [Defendant's vehicle] with a handgun in his right hand.").) There were substantial grounds "to warrant a prudent man in believing" Defendant's vehicle may contain evidence of illegal firearms. *Gardenhire*, 205 F.3d at 315; *Smith*, 510 F.3d at 647. The court will not suppress the evidence uncovered upon searching his vehicle. *Howard*, 621 F.3d at 451.

## IV. CONCLUSION

Defendant moves to suppress evidence relying solely on the contention that the initial attempted traffic stop was illegal. However, the intended stop was never completed, and Defendant was not "seized" under the Fourth Amendment until he was brought down and arrested. Things that Defendant abandoned or lost while he fled—a firearm on a public sidewalk and a magazine in an abandoned vehicle left running—are admissible against Defendant at trial. Accordingly,

IT IS ORDERED that Defendant's "Motion to Suppress Evidence Seized in Violation of Defendant's Fourth Amendment Rights" (ECF No. 23) is DENIED.

                                                    s/Robert H. Cleland              /
                                                    ROBERT H. CLELAND
                                                    UNITED STATES DISTRICT JUDGE

Dated:  May 8, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 8, 2020, by electronic and/or ordinary mail.

                                                    s/Lisa Wagner                   /
                                                  Case Manager and Deputy Clerk
                                                  (810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\19-20839.MOCK.MotiontoSuppress.RMK.RHC.5.docx